IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANDY'S TOWING, INC.,

   Plaintiff,

vs.             Case No. 10-2354-JTM

BULLDOG BUILDING SYSTEMS, INC.,

   Defendant.

MEMORANDUM AND ORDER

  The plaintiff's Motion for Partial Summary Judgment (Dkt. No. 38) is before the court. Plaintiff moves the court for an order providing that Oregon law applies to its breach of contract and consumer fraud claims. The defendant did not file a response, thus, the factual matters relevant to the motion are not in dispute. For the following reasons, the court grants the motion.

**I. Findings of Fact**

  Plaintiff, Andy's Towing, Inc., is an Oregon corporation with its principal place of business in Oregon. Defendant, Bulldog Building Systems, Inc., is a Kansas corporation with its principal place of business in Kansas. Lawrence Zahm and Mike Ellis were officers and shareholders of Bulldog Building Systems during the relevant time period.

  On January 10, 2008, the parties entered a contract in which defendant agreed to provide plaintiff with a pre-engineered steel building structure in exchange for $80,000, including a $16,000

down payment. Prior to that, on January 9, Ellis faxed a Rigid Frame Quote and document labeled by defendant as BBS 001018 from Columbus, Kansas, to plaintiff in Oregon seeking Hoai Tran's signature. Tran, an agent of plaintiff, signed the document the next day in Oregon. After signing, he faxed the document back to defendant in Kansas. On January 24, Zahm signed a Bulldog Building Systems Fabrication Release form and faxed it to Tran. Tran signed the Fabrication Release in Oregon and faxed it back to defendant, which notified defendant plaintiff was ready for delivery of the building. After receiving the Fabrication Release, Zahm requested a quote from manufacturer Whirlwind Steel Buildings, Inc. (Whirlwind) for the building plaintiff ordered. In February, Whirlwind provided Zahm a Quotation/Sales Order Acknowledgment Form for his signature and approval. Zahm did not sign the form.

Tran testified that in March or April 2008, Ellis called and informed him the building was ready to be shipped. He also testified that he requested defendant delay shipping the building while plaintiff finished tearing down its existing building. On or about May 22, the cost of building materials contained in the agreements increased and continued to do so through November 18. Defendant sent plaintiff three Fabrication Releases dated May 22, September 9, and November 18, showing price increases from the price listed in the document Tran signed on January 10. Defendant also sent plaintiff a "Terms and Conditions" document informing plaintiff that these terms and conditions applied to the contract signed on January 10. Defendant has not delivered the building and has not returned plaintiff's deposit.

## II. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part

of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.* Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 250-51. Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting

FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*).

Because this motion is uncontested, D. Kan. R. 7.4(b) allows the court to grant the motion without further notice. The Rule provides:

> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.

D. KAN. R. 7.4(b).[1] However, "district courts must construe and apply local rules in a manner consistent with Fed. R. Civ. P. 56." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). The Tenth Circuit has held a district court may not grant summary judgment based solely on D. Kan. R. 7.4 without making specific determinations under Fed. R. Civ. P. 56(c) that summary judgment is appropriate or without analyzing *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988), to determine whether the court may enter summary judgment as a sanction. *Reed*, 312 F.3d at 1196.

Under Fed. R. Civ. P. 56, the moving party:

> "*[A]lways* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Reed*, 312 F.2d at 1194 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (emphasis in *Reed*)). Thus, summary judgment is not proper merely because the nonmoving party failed to respond. *Id.* The moving party must first meet its initial burden "of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Id.* If the moving

---

[1] D. Kan. R. 6.1(d)(2) states: "*Dispositive motions*. Responses to motions to dismiss, motions for summary judgment, motions to remand, or motions for judgment on the pleadings must be filed and served within 21 days." *Id.*

party fails to meet its burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented*." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (emphasis in *Reed*)). Even Fed. R. Civ. P. 56(e) specifically outlines the consequences of failing to oppose a summary judgment motion. Rule 56(e) states: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of facts as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

Even if the court granted summary judgment against a party for failing to oppose the motion as a sanction, granting the motion under D. Kan. R. 7.4 would not be appropriate. "In applying such a sanction, the district court must consider: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant." *Reed*, 312 F.3d at 1195. "'Only when these aggravating factors outweigh[] the judicial system's strong predisposition to resolve cases on their merits is outright dismissal with prejudice an appropriate sanction.'" *Id.* (quoting *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

Thus, despite the clear language of D. Kan. R. 7.4, this court may not grant summary judgment to plaintiff simply because defendant has not responded to the summary judgment motion. The court will now determine whether plaintiff met its burden.

**III. Conclusions of Law**

Plaintiff argues Oregon law applies to its breach of contract and consumer fraud claims against defendant. This court will conduct independent analyses to determine whether Oregon law applies to either or both claims.

5

"A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state." *Jamieson v. Vatterott Educational Cent., Inc.*, 473 F. Supp.2d 1153, 1158 (D. Kan. 2007) (citing *Missouri P.R. Co. v. Kan. Gas & Elec. Co.*, 862 F.2d 796, 798 n.1 (10th Cir. 1988)); *see also Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). "'When addressing choice-of-law issues, the Kansas [appellate] courts follow the Restatement (First) of Conflict of Laws.'" *Brenner v. Oppenheimer & Co., Inc.*, 273 Kan. 525, 538, 44 P.3d 364, 374 (2002) (quoting *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App.2d 128, Syl. ¶ 7, 38 P.3d 757, 759 (2002)).

*A. Breach of Contract*

"'For purposes of contract construction, Kansas follows the theory of lex loci contractus—the place of the making of the contract controls. Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls.'" *Jamieson*, 473 F. Supp.2d at 1158-59 (quoting *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp.2d 1141, 1145 (D. Kan. 1999)).[2] "'A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done.'" *Id.* at 1159 (quoting *Smith v. McBride & Dehmer Const. Co.*, 216 Kan. 76, 79, 530 P.2d 1222, 1225 (1975)). The question becomes, where was this contract "made"? It is plaintiff's obligation to present sufficient facts to show that Oregon's law applies. *See Layne Christensen Co.*, 30 Kan. App.2d at 143-44, 38 P.3d at 767. If plaintiff fails to present sufficient facts, the court is justified in applying the law of the forum.

---

[2] Kansas choice of law rules do allow the parties to choose the law applicable to their agreement, however, there is no choice-of-law provision in the contract at issue. *See Brenner v. Oppenheimer & Co., Inc.*, 273 Kan. 525, 538, 44 P.3d 364, 374 (2002).

6

*Id.* at 144, 38 P.3d at 767.

In this case, plaintiff has presented evidence showing defendant's agent Mike Ellis signed the Rigid Frame Quote and document labeled by defendant as BBS 001018 and sent it to Hoai Tran in Oregon on January 9. The Rigid Frame quote contained the specifications of the building defendant agreed to provide and the price plaintiff agreed to pay. Tran signed the document the next day in Oregon and faxed it back to defendant in Kansas. When Tran signed the contract in Oregon (the last act necessary to form the contract), he accepted the contract and it became "made" for choice of law purposes. Thus, according to Kansas law the *lex loci contractus* is Oregon, and Oregon law applies to plaintiff's breach of contract claim. *See Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 213, 4 P.3d 1149, 1162 (2000) (holding employment contract was finalized in Kansas, thus, Kansas law applied); *Novak v. Mutual of Omaha Ins. Co.*, 29 Kan. App.2d 526, 535, 28 P.3d 1033, 1039 (2001) (holding contract was "made" in Nebraska because contracted required final approval in Nebraska).

It is also important to note that there is potentially no problem applying either Kansas or Oregon law to this claim absent an actual conflict of laws between the states. That is, "if the outcome of this dispute would be the same under the laws of [Oregon] as under the laws of Kansas, the case presents a 'false conflict.'" *Brenner*, 273 Kan. at 535, 44 P.3d at 372 (alterations added). "'Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue.'" *Id.* (quoting *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994)). Because the parties have not alleged a conflict, and it is clear Oregon law is the place of contracting, Oregon law applies, and it is not necessary to determine whether the conflict here is actual or false.

*B. Consumer Fraud*

Next, plaintiff claims Oregon law applies to its consumer fraud count. Unlike the breach of contract claim, it appears there is an actual conflict between the consumer fraud laws of each state. Pursuant to the Oregon Unlawful Trade Practices Act (OUTPA), Or. Rev. Stat. § 646.605, *et. seq.*, plaintiff believes it must prove the following:

> 1. Plaintiff is a corporation;
> 2. Defendant is a corporation;
> 3. Defendant represented to the plaintiff that the purchase price of the steel building structure was $80,000;
> 4. Defendant accepted a $16,000 deposit from plaintiff;
> 5. After the contract was signed by both parties, Defendant sought to increase the purchase price by inserting additional terms and conditions into the parties' agreement that plaintiff had not known about or bargained for;
> 6. Defendant's conduct constitutes willful, unlawful, and/or unconscionable tactics in connection with the sale of goods;
> 7. Defendant did not deliver the goods as promised and, upon plaintiff's request, failed to refund any of the $16,000.00 deposit that was paid by the plaintiff for the purchase of the undelivered steel building structure;
> 8. Defendant has no right or claim to the deposit;
> 9. Defendant has no valid defense for keeping the deposit;
> 10. Defendant's refusal to return the deposit was not made in good faith;
> 11. Plaintiff suffered ascertainable loss of money or property as a result of the defendant's willful use or employment of unlawful and/or unconscionable practices.

*See* Dkt. No. 36, Pretrial Order, Theories of Recovery. Defendant contends the Kansas Consumer Protection Act (KCPA) Kan. Stat. Ann. § 50-623, *et seq.* applies, which requires proof of the following:

> a. That the plaintiff was a consumer.
> b. That the defendant was a supplier.
> c. That the defendant engaged in willful and wanton deceptive acts and practices in making representations to the plaintiff concerning delivery of the components of its building.
> d. That these acts and practices concerned a material fact, that is, it was one that a reasonable person would attach importance to in determining how to act regarding a particular transaction.

8

e. That the plaintiff suffered damages as a consequence of these acts and practices.

*See* Dkt. No. 35, Pretrial Order, Theories of Recovery. In addition to the differences alleged by the parties, a cursory review of both states's laws illuminates differences in their consumer fraud laws. Given this actual conflict, the court must determine which state's law applies.

In tort cases, Kansas follows the traditional rule of *lex loci delecti*. Terri Savely Bezek, *Conflict of Laws in Kansas: A Guide to Navigating the Dismal Swamp*, 71 J. KAN. B. ASS'N. 21, 24 (2002); *see also Thompson v. Jiffy Lube Intern., Inc.*, 250 F.R.D. 607, 627 (D. Kan. 2008). "Under this rule, the court will determine the 'place of the wrong' and apply the substantive law of that State." *Bezek*, 71 J. KAN. B. ASS'N, at 24. Kansas courts typically consider the "wrong" to be the place where the injury was sustained rather than where the tortious act took place. *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985) (holding Kansas law applied when defendant sold alcohol to a minor in Missouri but plaintiff was injured in an automobile accident in Kansas). Generally, the place of the injury is obvious, and it is easy to determine which state's law applies. That is not necessarily the case in a consumer fraud case, and, Kansas has not specifically addressed a choice-of-law issue regarding consumer fraud. The Restatement (First) of Conflict of Laws provides some guidance. Section 377 states the general rule, "[t]he place of the wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place." Note 4 of that section provides two examples for determining the place of the wrong when a person sustains a loss by fraud. The illustrations are:

> 5. A, in state X, makes false misrepresentations by letter to B in Y as a result of which B sends certain chattels from Y to A, in X. A keeps the chattels. The place of the wrong is in state Y where B parted with the chattels.
> 6. A, in state X, owns shares in the M company. B, in state Y, fraudulently persuades A not to sell the shares. The value of the shares falls. The place of wrong is X.

9

RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 n.4 (1934). The facts in this case loosely correlate to illustration number 6. Plaintiff, in Oregon, contracted to buy a building from defendant, who resides in Kansas. According to plaintiff, defendant committed fraud by failing to deliver the building to it in Oregon. Following the illustration, the place of the wrong would be Oregon, because that is the place plaintiff sustained its loss. This district has previously cited Note 4 of § 377 for the proposition that the place of the wrong in a fraud case is the state where the loss is sustained. *Mayberry v. Said*, 911 F. Supp. 1393, 1399-1400 (D. Kan. 1995) (citing *Raymark Indus., Inc. v. Stemple*, 714 F. Supp. 460, 464 (D. Kan. 1988)).

Such a result makes sense even without reference to the illustration as plaintiff contracted to receive the building in Oregon. Because plaintiff did not get what it bargained for in Oregon, it sustained injury in Oregon regardless of whether defendants made fraudulent representations in Kansas. *See Ling*, 237 Kan. at 634-35, 703 P.3d at 735 ("We hold that in an action for recovery of damages for injuries sustained in Kansas which were the result of a negligent act in another state, the liability of the defendant is to be determined by the laws of this state.").

Even if Kansas courts went beyond the First Restatement and applied the "most significant relationship" test of the Second Restatement, the present facts would likely tilt toward applying Oregon law. *See Thompson*, 250 F.R.D. at 628 (citing *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005)). Under the most significant relationship test, the most important factor is where the plaintiff acted in reliance on the defendant's representations. *In re Pharmaceutical Indus.*, 230 F.R.D. at 82-83. Here, plaintiff alleges it tore down its existing building in Oregon to make room for the new building it ordered from defendant. Even if the fraud occurred in Kansas, plaintiff's reliance occurred in Oregon, which would overcome

the location of the fraud. *See id.* at 83 ("The conclusion that the home state of the consumer has a more significant relationship to the alleged fraud than the place of business of the defendant is in accordance with the principles of Restatement § 6, since state consumer protection statutes are designed to protect consumers rather than to regulate corporate conduct.").[3]

IT IS ACCORDINGLY ORDERED this 13th day of June 2011, that Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 38), is granted.

                                                     s/ J. Thomas Marten
                                                     J. THOMAS MARTEN, JUDGE

---

[3]The most significant relationship factors are:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).